1

2

3          UNITED STATES DISTRICT COURT

4          EASTERN DISTRICT OF WASHINGTON

5  GARY L. GIBBS,                        No.  CV-12-392-JTR

6          Plaintiff,

7                                        ORDER GRANTING
                                         DEFENDANT'S MOTION  FOR
8          v.                            SUMMARY JUDGMENT

9  CAROLYN W. COLVIN,
10 Commissioner of Social Security,

11

12         Defendant.

13         Before the Court are cross-motions for summary judgment.  ECF Nos.  18,

14 21.  Attorney Dana C. Madsen represents Plaintiff; Special Assistant United States

15 Attorney Jeffrey R. McClain represents the Commissioner of Social Security

16 (Defendant).  The parties have consented to proceed before a magistrate judge.

17 ECF No. 6.  After reviewing the administrative record and the briefs filed by the

18 parties, the court **GRANTS** Defendant's Motion for Summary Judgment and

19 **DENIES** Plaintiff's Motion for Summary Judgment.

20                              **JURISDICTION**

21         On October 13, 2009, Plaintiff filed a Title II application for a period of

22 disability and disability insurance benefits, along with a Title XVI application for

23 supplemental security income, both alleging disability beginning October 13, 1999.

24 Tr. 18; 120.  Plaintiff reported that he could not work due to vision loss, severe

25 neck pain, and he explained that he frequently runs into objects due to his limited

26 vision and his limited range of motion in his neck.  Tr. 124.   Plaintiff's claim was

27 denied initially and on reconsideration, and he requested a hearing before an

28 administrative law judge (ALJ).  Tr. 62-99.  A hearing was held on September 15,

2010, at which vocational expert K. Diane Kramer, and Plaintiff, who was represented by counsel, testified. Tr. 38-60. ALJ James W. Sherry presided. Tr. 36. The ALJ denied benefits on November 2, 2010. Tr. 18-26. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and, thus, they are only briefly summarized here. At the time of the hearing, Plaintiff was 36 years old, divorced, and living with his 15 year old son in a single-wide trailer. Tr. 42-43. Plaintiff completed the 11th grade, and eventually earned a GED. Tr. 43.

Plaintiff testified that he worked as a fork lift driver for Spokane Packaging until 1999, when he was involved in a motorcycle accident. Tr. 44-46; 95; 239. He was not wearing a helmet, and as a result, he was briefly unconscious, and he was subsequently hospitalized for eight days. Tr. 239; 245. He was discharged to a rehabilitation facility, where he spent an additional 17 days. Tr. 245. Upon discharge from the rehabilitation facility, Plaintiff's diagnoses were: Moderate closed head injury (approximately 24 hours or less loss of consciousness); C1-C2 stable fracture without spinal cord injury; alcohol dependence; and mixed personality disorder with antisocial traits (possibly bipolar features). Tr. 245.

Plaintiff testified that as a result of the accident, he lost "peripheral vision off the left side in both eyes." Tr. 46. He testified his neck injury left him with limited range of motion, and turning his neck is "really painful." Tr. 46-47. Plaintiff also testified that his short-term memory was detrimentally affected and is "really bad." Tr. 47. He testified that he has headaches two-to-three times per week, that last between four and five hours. Tr. 54. He does not take any medication for his headaches. Tr. 54.

Plaintiff testified that his mother or son cooks and cleans for him. Tr. 49-50. He testified that he spends his day watching television, or outside. Tr. 50-51. His

said his mother or girlfriend does his grocery shopping.  Tr. 50-51.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales, 402 U.S. 389, 401 (1971).*  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence exists to

support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 12, 2004, the amended onset date.[1] Tr. 20. At step two, the ALJ found Plaintiff suffered from the severe impairments of complete left homonymous hemianopia (peripheral vision loss) and a cervical spine fracture. Tr. 20. At step three, the ALJ found Plaintiff's

_____

[1]During the Administrative hearing, Plaintiff amended his onset date to March 12, 2004. Tr. 20; 41-42.

impairments, alone and in combination, did not meet or medically equal one of the listed impairments.  Tr. 22.  The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work:

> Specifically, the claimant can lift no more than 20 pounds at a time and can frequently lift or carry 10 pounds.  The claimant can stand/ walk 6 of 8 hours, sit 6 of 8 hours, push/pull within lifting restrictions and occasionally crawl.  Further, the claimant should avoid concentrated exposure to irritants, such as fumes, odors, dust, chemicals, and gases, as well as, poorly ventilated areas. Additionally, the claimant can perform work requiring occasional peripheral acuity and depth perception.

Tr. 22.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 25.  At step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as cleaner, survey worker, and mail clerk.  Tr. 26.  The ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  Tr. 26.

## ISSUES

Plaintiff contends the ALJ erred by improperly weighing the medical opinions.  ECF No. 19 at 7-11. [2]

---

[2]Plaintiff's briefing includes a cursory observation that the ALJ found Plaintiff had no psychological impairment at step two.  ECF No. 19 at 10.  It is far from clear that Plaintiff intended to raise this as an issue, because Plaintiff's briefing failed to list discrete issues.  The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief.  See *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th

# DISCUSSION

## A.    Dennis Pollack, Ph.D.

Plaintiff argues that the ALJ improperly weighed the opinion from Dennis Pollack, Ph.D.  ECF No. 19 at 9-10.  On September 10, 2010, Dennis R. Pollack, Ph.D., examined Plaintiff and completed a report about his findings.  Tr. 228-33. During the exam, Dr. Pollack administered several objective tests related to intelligence, memory, personality and neuropsychological functioning.  Tr. 230-32. Dr. Pollack diagnosed Plaintiff with a cognitive disorder due to head trauma, and a personality disorder, NOS.  Tr. 233.

On September 12, 2010, Dr. Pollack completed a Mental Medical Source Statement form.  Tr. 234-37.  In that form, Dr. Pollack found that Plaintiff was markedly limited in both his ability to: (1) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (2) accept instructions and respond appropriately to criticism from supervisors.  Tr. 235.  Additionally, Dr. Pollack found that Plaintiff would have moderate limitation in his ability to be aware of normal hazards and take appropriate precautions.  Tr. 236.

The ALJ found Dr. Pollack's opinion less persuasive than the opinion from Dr. Bostwick.  Specifically, the ALJ noted that Dr. Pollack's check-marked findings were internally inconsistent.  Tr. 21.  The ALJ explained that Dr. Pollack assessed Plaintiff would be markedly limited in the ability to complete a normal workweek, Dr. Pollack also opined Plaintiff would have no limitation in his ability to maintain attention and concentration for extended periods, and Plaintiff has only mild limitation in his ability to sustain an ordinary routine.  Tr. 21.  Also, the ALJ

Cir. 2008).  As a result of Plaintiff's failure to specifically set forth a challenge to the ALJ's Step Two determinations, the court will not address this issue.

found that Dr. Pollack's assessed limitations are contradicted by Plaintiff's activities of daily living. Tr. 21. In support, the ALJ cited Plaintiff's admission to Dr. Bostwick that he does his own laundry, shopping, he performs automotive repair, drag racing, reads, watches movies, performs yard work, and he plays video games with his son. Tr. 21.

The medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* However, "[t]he ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

An ALJ may properly reject a treating physician's opinion that is conclusory and unsupported by clinical findings, particularly check-the-box style forms. *See Batson*, 359 F.3d at 1195 (holding that the ALJ did not err in giving minimal evidentiary weight to the opinions of the plaintiff's treating physician where the opinion was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of the plaintiff's medical condition, and was based on the plaintiff's subjective descriptions of pain). When providing reasons for rejecting opinion evidence, the ALJ should provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ must do more than merely state his conclusions: "[h]e must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (*citing Embrey v. Bowen*, 849 F.2d 418,

421-22 (9th Cir. 1988)).

Plaintiff complains that the ALJ's reason for giving less weight to Dr. Pollack's opinion is simply boilerplate and fails to provide sufficient specificity. ECF No. 19 at 11.  Plaintiff fails to recognize that the ALJ provided specific examples from the record that support his reasoning.  For example, the ALJ cited to the internal inconsistency in Dr. Pollack's report.  Tr. 21.  Additionally, the ALJ provided specific examples of the contradiction between Dr. Pollack's opinion of Plaintiff's functional limits and Plaintiff's specific admissions to Dr. Bostwick that evidenced his ability to independently perform activities of daily living.  Tr. 21; 196-98.

The ALJ offered specific and legitimate reasons to discount the contradicted opinions of Dr. Pollack; namely, internal inconsistency, and inconsistency with Plaintiff's activities of daily living.  Tr. 21.  Both are supported by the record, and are proper reasons to afford Dr. Pollack's opinion little weight.  *See Roberts v. Shalala*, 66 F.3d at 184 (rejecting an opinion that contains internal inconsistencies is a specific and legitimate reason to discount the opinion; rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *Regennitter v. Commissioner of SSA*, 166 F.3d 1294, 1297 (9th Cir. 1998) (inconsistencies with clinical observations can "satisfy the requirement of a clear and convincing reason for discrediting a claimant's testimony"); *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001) (ALJ may reject the claimant's testimony when inconsistent with the claimant's daily activities and contrary to the medical evidence).  The ALJ's reasoning is supported by the record.

**B.   Donald Ankov, M.D.**

Plaintiff argues that the ALJ improperly rejected the opinion from Donald Ankov, M.D.  ECF No. 19 at 8.  On July 9, 2009, Donald Ankov, M.D., completed a form entitled, "Certification for Medicaid:  GAX Decision."  Tr. 226.  In the form, Dr. Ankov references two June 2009 eye exam records that revealed, in part,

3a2a44f9c7ba13b5

that Plaintiff had bilateral vision field loss on the left and hemienopsia.  Tr. 226. [3]
Dr. Ankov summarily concluded that Plaintiff would "likely meet the Listing
2.03."  Tr. 226.

The ALJ rejected Dr. Ankov's opinion that Plaintiff met Listing 2.03
because the opinion was equivocal, cursory, and failed to provide a medical
explanation.  Tr. 22.  An ALJ may discredit treating physicians' opinions that are
conclusory, brief, and unsupported by the record as a whole, or by objective
medical findings.  *Batson*, 359 F.3d at 1195.

As the ALJ found, Dr. Ankov's opinion that Plaintiff's vision impairment
would "likely" meet Listing 2.03 was not accompanied by an explanation, testing,
or clinical notes other than the notations from medical records from Plaintiff's eye
exams.  Tr. 226.  Listing 2.03 requires contraction of the visual field in the better
eye with (a) the widest diameter subtending an angle around the point of fixation
no greater than 20 degrees; (b) a mean deviation of -22 or worse, determined by
automated static threshold perimetry as described in Listing 2.00(A)(6)(a)(v); or
(c) a visual field efficiency of 20 percent or less as determined by kinetic
perimetry.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.03.  Dr. Ankov's minimal
assessment provided insufficient data on which to determine if Plaintiff's vision
impairment met Listing 2.03.  As such, the ALJ's rejection of Dr. Ankov's opinion
that Plaintiff may meet Listing 2.03 was specific and legitimate, and supported by
the record.

---

[3]Dr. Ankov noted:

6/18/09: bilateral field loss on left.  Va without correction 2/50 on L),
20/40 on R), 20/30 both eyes.

Ophthalmology exam 6/17/09:  corrected Va R) 20/230-2, L) 20/20.

Bilateral L)h. hemienopsia.

Tr. 226.

1    **C.    Debra A. Stimpson, PA-C**

2        Finally, Plaintiff argues that the ALJ improperly rejected the opinion from

3    Debra Stimpson, PA-C. ECF No. 19 at 8. On June 16, 2009, Ms. Stimpson

4    completed a Physical Evaluation form. Tr. 180-83. In the form, Ms. Stimpson

5    found that Plaintiff's visual field defect would present an inability to perform one

6    or more basic work-related activities, and his neck impairment would pose a mild

7    interference with work-related activities. Tr. 182. Ms. Stimpson concluded that

8    Plaintiff was limited to sedentary work. Tr. 182. Also included in the record is a

9    chart note from Plaintiff's office visit with Ms. Stimpson on June 15, 2009. Tr.

10    184-87.

11        The ALJ gave little weight to Ms. Stimpson's opinion that Plaintiff was

12    limited to sedentary work because she failed to explain the correlation between

13    Plaintiff's visual field defect and her sedentary work rating. Tr. 24. Plaintiff

14    argues that Ms. Stimpson's evaluation was improperly rejected because Ms.

15    Stimpson examined Plaintiff, and upon examination noted that Plaintiff had a

16    decreased range of motion with left rotation. ECF No. 19 at 8.

17        The ALJ's reason is specific and legitimate and supported by substantial

18    evidence.  As the ALJ noted, Ms. Stimpson failed to explain how or why

19    Plaintiff's visual impairment or his limited range of motion in his neck on his left

20    side rendered him unable to perform work other than sedentary work. The ALJ

21    may reject an opinion that is brief, conclusory, or inadequately supported by

22    clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). A

23    careful review of Ms. Stimpson's Physical Evaluation and the chart notes from the

24    examination do not reveal facts or explanation that would support her opinion that

25    Plaintiff is limited to sedentary work. As such, the ALJ's rejection of Ms.

26    Stimpson's opinion was not error.

27                                    **CONCLUSION**

28        Having reviewed the record and the ALJ's conclusions, this court finds that

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

the ALJ's decision is supported by substantial evidence and free of legal error.
Accordingly,

**IT IS ORDERED**:

1.  Defendant's Motion for Summary Judgment, **ECF No. 21,** is **GRANTED**.

2.  Plaintiff's Motion for Summary Judgment, **ECF No. 18,** is **DENIED**.

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED February 19, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11